UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Michael Bordner, | ) C/A No. 4:15-5064-RBH-TER |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| Town of Atlantic Beach, | ) Report and Recommendation |
| Jake Evans, | ) |
| Charlene Taylor, | ) |
| Josephine Isom, | ) |
| William Booker, | ) |
| and Linda Cheatham, | ) |
| Defendants. | ) |
| | ) |

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff also alleged a state law claim for conspiracy, which Plaintiff has since conceded. ECF No. 1; ECF No. 20 at 9. Presently before the court is Defendants' Motion for Summary Judgment. ECF No. 16. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(g), DSC. This report and recommendation is entered for review by the district judge.

## I. FACTS

**Introduction**

In August 2011, Plaintiff became Police Chief of Atlantic Beach. Pl. Dep., ECF No. 16-3 at 20-22. In November 2012, the Town Hall had a black mold problem which could not be fixed while simultaneously retaining staff due to a lack of funds. Thus, most staff, including Plaintiff, were laid off. ECF No. 16-3 at 20-22. Plaintiff stated the mold was not a pretext to his layoff, but was a genuine reason. ECF No. 16-3 at 21-23, 48.

A month after Plaintiff's layoff, Officer Jackson, an employee subordinate in hiring order to

Plaintiff, returned to duty after being injured. ECF No. 16-3 at 18, 31-32. Later, Defendant William Booker hired Tim Taylor as the new Police Chief, and Plaintiff was not rehired. ECF No. 16-3 at 151. Plaintiff believes he was not rehired because the Defendants perceived Plaintiff to be a member of an opposite faction. ECF No. 20 at 7. Affidavits filed in support of Plaintiff indicate Plaintiff may have not been recalled from the layoff due to racial discrimination.

Plaintiff stated in his deposition that there was no custom or policy of the town as the entity itself violating Plaintiff's rights. ECF No. 16-3 at 147-48. Plaintiff stated it was the town employees' failure to follow town policies that injured him. ECF No. 16-3 at 147-48. Plaintiff requests "actual, punitive, and consequential damages," attorney's fees, and back salary. ECF No. 1. Plaintiff's claimed injuries are loss of property, loss of income, emotional distress, and public humiliation. ECF No. 1.

Defendants Charlene Taylor, Josephine Isom,[1] and Jake Evans were members of the Town Council. ECF No. 16-3 at 91-93. Council members hire the town manager and the town manager hires staff, including the Police Chief. ECF No. 16-3 at 89-90. Two prior Town Managers with hiring authority are Defendants here, Linda Cheatham and William Booker. ECF No. 16-3 at 152.

Affiant Benny Webb was the Town Manager when Plaintiff was hired as Police Chief. ECF No. 20-6. Affiant Darnell Price was the Town Building Official when Plaintiff was Police Chief. ECF No. 20-1. Affiant Carolyn Cole was the Mayor Pro Tem when the layoff occurred. ECF No. 20-3. Affiant Wendy Price was a council member from 2011 through 2013. ECF No. 20-4.

---

[1] Plaintiff did not state any specific acts that Defendants Isom and Taylor had done to violate his constitutional rights, only that they were members of the Town Council. ECF No 16-3 at 91-93, 151.

2

**Layoff**

Plaintiff's claims revolve around two Town policies found in the Personnel Manual.[2] ECF No. 16-4. Plaintiff alleges that Defendants did not follow the procedure under "Layoff" in the Manual in bringing employees back. ECF No. 16-3 at 48. The Manual stated: "Recalls to work will be made in reverse order of layoff (i.e. the most senior full-time employees will be called back first)." ECF No. 1 at 3; ECF No. 16-4 at 47. Affiant Price stated: "According to the personnel policy grievance process, Mr. Bordner should have been the first rehire once the building issue had been resolved." ECF No. 20-2. Webb stated: "All things being even, [Plaintiff] should have been the first rehire according to Town policy, the only inference from the failure to do so and then to deny [Plaintiff] a grievance, are that he was denied employment because of his association with Ms. Price and Cole." ECF No. 20-6. Webb attested that other employees who had been laid off were rehired by the Town. ECF No. 20-6. Webb stated "Under the Town of Atlantic Beach policies and practices, [Plaintiff] should have been re-hired when the Chief of Police job became available. ECF No. 20-6.

---

[2] There appears to be a surface disagreement about the Manual as produced and about which Plaintiff was questioned. Plaintiff was not certain the Manual was the same Manual he was given during his employment, but that he was given a Manual. ECF No. 16-3 at 95-97, 116-17. Plaintiff stated the layoff and grievance procedures in the Manual produced were the same as the Manual he received. ECF No. 16-3 at 124-128. Additionally, Defendants attached the Affidavit of Cheryl Pereira to their Motion. ECF No. 16-5. Pereira was the Town Clerk from October 1995-July 2011, and returned from a layoff in 2013. She attests that the attached Manual was the same Manual throughout the time she was Town Clerk and did not change until 2015. ECF No. 16-5. Plaintiff's entire claim relies on the Manual. Plaintiff has not produced a different Manual, and Plaintiff, in support of his arguments, quotes the same Manual used by Defendants. ECF No. 20. Both parties have relied on the Manual, and thus, the court finds no reason to question the authenticity of the Manual, in relevant part, for purposes of this motion.

3

**Grievance**

Plaintiff alleges Defendants did not allow Plaintiff a hearing, pursuant to the "Grievance Procedure" section of the Manual, to contest the layoff or the failure to rehire him. ECF No. 16-3. at 126-127, 77. Plaintiff testified that the basis for the grievance right was the Manual. ECF No. 16-3 at 77. Plaintiff never asked the hiring authority, Defendant Booker, for a hearing or attempted to contact him. ECF No. 16-3 at 34, 107, 145, 152.

Webb attested:

> The Town of Atlantic Beach used the lay-off of [Plaintiff] as a pretense to terminate him without a grievance hearing, which is the proper procedure for a civil servant in municipal government. According to the Town of Atlantic Beach policy and procedures, [Plaintiff] was entitled to a grievance hearing by the Town of Atlantic Beach. Denying [Plaintiff] a grievance hearing goes against policy, procedure, and the Atlantic Beach town ordinances. As a matter of public policy, [Plaintiff] has a right to know why he was terminated and why he was denied the right to a public or executive session grievance hearing.

ECF No. 20-7.

Windy Price and Carolyn Cole attested that Defendant Linda Cheatham knew of the Manual and knew how to bring employees back from a layoff or to offer such employees due process through the grievance procedures. ECF Nos. 20-4 and 20-3. Price and Cole stated: The Town "denied [Plaintiff's] due process rights and violated [Plaintiff's] civil rights." ECF Nos. 20-4 and 20-3.

Additionally, the Manual provides employment is at-will:

> **THESE POLICIES ARE SUBJECT TO CHANGE WITHOUT PRIOR NOTICE AND CREATE NEITHER A CONTRACT NOR A PROPERTY INTEREST IN EMPLOYMENT.** All employees have the right to terminate their employment at any time, with or without notice, and with or without reason. The Town reserves the same right.

ECF No. 16-4 at 3. The disclaimer is repeated in the grievance section of the Manual:

> Nothing in this grievance procedure creates a property interest in employment or a contract of employment, nor does this procedure limit the authority of the Town Manager [under Section 5-13-90, Code of Laws of South Carolina, 1976, as amended] to remove any employee when necessary for the good of the City.

ECF No. 16-4 at 29.

**Defendant Evans' conversation with Plaintiff**

Defendant Evans asked Plaintiff to testify against Carolyn Cole involving an ethics complaint against Cole. ECF No. 16-3 at 57-60. Plaintiff refused and believes that his refusal turned Evans against him. ECF No. 16-3 at 60. Plaintiff said that Evans did not threaten or intimidate him and Evans just walked away after the conversation. ECF No. 16-3 at 60, 74. When asked how Evans violated Plaintiff's constitutional rights, Plaintiff answered asking him to testify and failing to follow town policy. ECF No. 16-3 at 149.

Plaintiff has not alleged that he was a witness in any federal court proceedings.

Carolyn Cole's affidavit implies that the Evans' conversation occurred near in time to the Cheatham conversation discussed below. Cole attested that after the Town reinstated all the African American employees, Defendant Cheatham called Plaintiff for a meeting. Cole stated that Plaintiff was given a loyalty test by Defendant Evans when Evans asked Plaintiff to testify against Cole. Cole stated that Evans then went back into Cheatham's office and Cheatham never came out to meet with Plaintiff. ECF No. 20-3.

**Plaintiff's Appointment with Defendant Cheatham**

Plaintiff had an appointment with Cheatham. He waited outside her office for a length of time, then she stated she did not have time to meet him. ECF No. 16-3 at 26. Plaintiff called her several times to get another appointment. ECF No. 16-3 at 26-27, 34. When asked how she violated

his constitutional rights, Plaintiff stated it was failing to meet him and failing to return his calls. ECF No. 16-3 at 145, 154-55. Cheatham had sent a personnel change status form when Plaintiff was first laid off due to lack of funds, which Plaintiff said was an accurate reason. ECF No. 16-3 at 23-24, 155.

Affiant Darnell Price stated: "I observed interim town manager Linda Cheatham inform[] Shelia Singletary, town clerk, that she had a meeting with Mr. Bordner but she refused to meet with him and that she didn't want any more white people working for the town." ECF No. 20-2. Price stated that Defendant Cheatham hired an African American Police Chief instead of reinstating Plaintiff. ECF No. 20-4.

Plaintiff stated that Atlantic Beach was primarily an African American town and that at the time he was the only white person. Plaintiff stated that after the layoff African American employees were brought back. ECF No. 16-3 at 36. Plaintiff answered no when asked: "Do you believe the only reason they didn't bring you back was because of your race?" ECF No. 16-3 at 36, 53.

**Affiliations**

Plaintiff stated his claims were also based on the perception of association with a faction of people. Plaintiff's Response to the Motion for Summary Judgment states the class Plaintiff is a member of is "the perceived political opponents of Defendants." ECF No. 20 at 7. Affiant Price stated that because Benny Webb appointed Plaintiff as Police Chief that Plaintiff was then perceived by the Defendants as an ally of Webb and his faction. ECF No. 20-1. Webb attested that Defendants perceived Plaintiff as an ally of Cole's faction. ECF No. 20-6. Plaintiff stated that he held no affiliations: "No, I stay out of politics." ECF No. 16-3 at 54.

Both Darnell Price and Benny Webb attested that "the Town and its agents" had "a custom,

practice, and [] unwritten policy" "to retaliate against opposition factions and their associates,"and that Plaintiff was perceived as a member of a faction opposite the Defendants. ECF Nos. 20-1 and 20-6.

As to conspiracy allegations, Plaintiff states that he has only seen the Defendants together talking. ECF No. 16-3 at 91. Also, there are facts in the record regarding a SLED investigation that are not pertinent to Plaintiff's claims.[3]

## II. STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[3] Plaintiff was investigated for impersonating an officer. ECF No 16-3 at 128-29. Plaintiff admitted the investigation was due to his own automatic signature in an email to SLED. ECF No 16-3 at 133-136. Cole attested that a SLED agent contacted her saying that Plaintiff had submitted documentation claiming to be the police chief. Cole attested that she told the agent that Plaintiff was the police chief on a layoff. ECF No. 20-3. There were no consequences to Plaintiff from the investigation. *Id.* at 136.

242, 252 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir.1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. *See Celotex*, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see also Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir.1994); *Orsi v. Kickwood*, 999 F.2d 86, 91-92 (4th Cir.1993); D.S.C. Local Rules 7.04, 7.05.

### III.  DISCUSSION

Plaintiff brings some of his claims in this action pursuant to 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation and citation omitted). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by

the Constitution or laws of the United States was violated, and (2) that the alleged violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In order to assert a plausible § 1983 claim against any particular state actor, a "causal connection" must exist between the conduct alleged by the plaintiff and the particular defendant named in the suit. *See Kentucky v. Graham*, 473 U.S.159, 166 (1985); *Rizzo v. Good*, 423 U.S. 362, 371-72 (1976) (a § 1983 plaintiff must show that he suffered a specific injury resulting from a specific defendant's specific conduct and must show an affirmative link between the injury and that conduct); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977) (for an individual to be liable under § 1983, the Plaintiff must show that the defendant named acted personally in the deprivation of the plaintiff's rights).

The Plaintiff here must demonstrate that the official personally caused or played a role in causing the deprivation of a federal right. *See Graham*, 473 U.S. at 166 and *Harris v. City of Va. Beach*, 11 F. App'x 212, 215 (4th Cir.2001) (unreported) (affirming dismissal of the plaintiff's claim against five defendants when the plaintiff did not allege any of the defendants were personally involved in the alleged deprivation of his civil rights).

### A.  First Amendment Violation § 1983 Claim

Plaintiff alleges that the Defendants deprived him of his "property, employment and right to association" and violated "his rights under the First and Fourteenth Amendments to the U.S. Constitution to be free from retaliation for the exercise of his freedom of association, speech and criticism of defendants' lies, corruption and tyranny." Compl., ECF No. 1 at 4. "Plaintiff was intimidated, terrorized, and restrained from the exercise of his right to association, speech, and to criticize the government." *Id.* at 5. There are no specific facts alleged as to how each Defendant

9

committed the above conclusory statement. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff asserts as his First Amendment claim that he was not rehired or recalled based on the perception that he was associated with an "opposing faction."

"[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)(concerning an organization that did not accept female members and a state law that compelled acceptance of women into a private club). The Court has recognized a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622.

If the presence of an unwanted person affects a group's ability to advocate viewpoints, then the forced inclusion of an unwanted person in a group violates the group's freedom of expressive association. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000)(dealing with a state law requiring Boy Scouts to admit plaintiff as a member). In determining if a group is protected by the First Amendment freedom of association, the court must ask whether the group engages in expressive association, i.e. engaging in some form of expression. *Id.*

The threshold question in any First Amendment challenge is whether any protected First Amendment right is involved. If Plaintiff's group here is the *perception* of belonging to the opposing faction, then Plaintiff must show that the group engages in some form of protected expressive conduct. *See Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 257 (4th Cir. 2005).

A glance at foundational precedents of the freedom of association reveals that Plaintiff's allegations based on Defendants' *perception* of Plaintiff being a member of a group does not fall within the ambit of protected expressive conduct. A set of facts is not present to implicate a claim for violation of the freedom of association and it is recommended that Defendants' summary judgment motion be granted as to Plaintiff's First Amendment claim.

### B. Fifth Amendment Due Process Violation § 1983 Claim

Plaintiff alleges that the Defendants' acts, omissions, policies, and practices deprived Plaintiff of his right to due process and right to be free from seizure of his employment without cause or hearing. ECF No. 1 at 5. In Plaintiff's Response, Plaintiff argues that S.C. Code Ann. § 8-17-110 et seq. entitles Plaintiff to grievance rights. Additionally, Plaintiff argues S.C. Code Ann. § 41-1-110 (Supp. 2004) does not apply because the Manual was dated 1997. ECF No. 20 at 6-7.

In order to be protected by the Due Process Clause, the Plaintiff must have a liberty or property interest within the meaning of the Fourteenth Amendment. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-71 (1972). The Due Process Clause does not supplant traditional tort law and does not "impose federal duties that are analogous to those traditionally imposed by state tort law." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992) (internal citations omitted). With claims against public employees, "state law, rather than the Federal Constitution, generally governs the substance of the employment relationship." *Id.* To determine if Plaintiff has a constitutionally protected property right, the court must look to state law sources. *Garraghty v. Com. of Va., Dep't of Corr.*, 52 F.3d 1274, 1279 (4th Cir. 1995). If a state chooses to provide a grievance procedure, the procedure in and of itself "does not create an independent substantive right." *Id.* (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983)).

### *1. No Property Right in Employment Based on S.C. Code Ann. § 5-13-90*

First, the "Town of Atlantic Beach employs a council-manager form of government." *Cole v. Town of Atl. Beach Election Comm'n*, 393 S.C. 264, 267, 712 S.E.2d 440, 442 (2011). The council is responsible for hiring a town manager; a town manager is responsible for hiring and firing town employees like a police chief. *See* S.C. Code Ann. §§ 5-13-90, 5-13-30. The Fourth Circuit Court of Appeals held that two policemen did not have a property interest in employment because under § 5-13-90 the town manager was empowered to dismiss any city employee "for the good of the municipality," and the town manual could not be read as granting a property interest despite containing procedural protections. *Bunting v. City of Columbia*, 639 F.2d 1090, 1093-94 (4th Cir. 1981). Procedural protections in the manual did not negate the at-will status of the employee. *Id.* "Courts have consistently interpreted [§ 5-13-90] as providing only for at-will employment of municipal employees." *Mills v. Leath*, 709 F. Supp. 671, 674 (D.S.C. 1988). Consequently, Plaintiff has no claim to a property interest in his employment under this statute.

### *2. No Property Right in Employment Based on S.C. Code Ann. § 8-17-110 et seq.*

Additionally, Plaintiff argues that S.C. Code Ann. § 8-17-110 et seq. provides Plaintiff with a property right as a public employee. The statute provides that if a town adopts a plan for resolution of employee grievances, then that plan "if adopted, shall conform substantially to the guidelines set forth in this article." S.C. Code Ann. § 8-17-120. The statute, on its face, does not establish a property right to employment. Plaintiff has not alleged that the grievance policy set up by the Town of Atlantic Beach does not conform to the statutory guidelines. He states only that he was not given a grievance process and the Manual is the basis for that right. ECF No. 16-3 at 77. Similar to the plaintiff in *Jones v. Gilstrap*, 288 S.C. 525, 529, 343 S.E.2d 646, 649 (S.C. Ct. App. 1986), Plaintiff

never followed the Town's grievance process that was outlined in the Manual. ECF. No. 16-3 at 145. Plaintiff's argument is without merit; the above discussed cases and S.C. Code Ann. § 5-13-90 provide that state law does not give Plaintiff a property interest in Plaintiff's employment.

### 3. *No Property Right in Employment Based on Manual*

Plaintiff also contends that the Town's Manual gives rise to a constitutionally recognized property interest in his employment. Plaintiff has Due Process safeguards only if he has a constitutional property interest in his employment. *Pitman v. Wilson County*, 839 F.3d 225, 226 (4th Cir. 1988). He must have a "legitimate claim of entitlement to it." *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Courts look to state law to determine whether a property interest in employment exists. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Knight v. Vernon*, 214 F.3d 544, 553 (4th Cir. 2000).

Generally, employment in South Carolina is at-will. An employee's at-will status may be altered by the terms of an employee handbook. *Conner v. City of Forest Acres*, 348 S.C. 454, 463, 560 S.E.2d 606, 610 (2002). Where an employer issues a personnel manual, but wishes employment to remain at-will, the manual must contain a conspicuous disclaimer. *Small v. Springs Indus., Inc.*, 292 S.C. 481, 485. 357 S.E.2d 452, 455 (1987). Disclaimers are conspicuous as a matter of law where they are in a prominent position, in bold, capitalized print. *See Marr v. City of Columbia*, 307 S.C. 545, 547-48, 416 S.E.2d 615, 616 (1992).[4]

---

[4] Plaintiff and Defendants dispute the applicability of S.C. Code Ann. § 41-1-110 (Supp. 2004) based on the date of Plaintiff's Manual(prior to 2004) and the date Plaintiff was hired (2011). S.C. Code Ann. § 41-1-110 provides generally that a manual "shall not create an express or implied contract of employment if it is conspicuously disclaimed." The dispute is not one regarding a material fact and does not require resolution here because the court relies on the above discussed cases, which precede the date of passage of § 41-1-110, yet are supportive of the principles found in § 41-1-110 that handbooks containing a conspicuous disclaimer do not create

Here, the Manual provides:

> **THESE POLICIES ARE SUBJECT TO CHANGE WITHOUT PRIOR NOTICE AND CREATE NEITHER A CONTRACT NOR A PROPERTY INTEREST IN EMPLOYMENT.** All employees have the right to terminate their employment at any time, with or without notice, and with or without reason. The Town reserves the same right.

ECF No. 16-4 at 3. In the instant case, the disclaimer was conspicuous as a matter of law. Not only does a conspicuous disclaimer appear in the front of the Manual, it is repeated in the grievance section that Plaintiff relies on to argue a due process right to the grievance procedure:

> Nothing in this grievance procedure creates a property interest in employment or a contract of employment, nor does this procedure limit the authority of the Town Manager [under Section 5-13-90, Code of Laws of South Carolina, 1976, as amended] to remove any employee when necessary for the good of the City.

ECF No. 16-4 at 29.

### *4. Conclusion*

The Manual, § 8-17-110, and § 5-13-90 are unambiguous: Town employees are at-will employees. At-will public employees have no property interest in their employment cognizable under the Due Process Clause. *Pittman v. Wilson Cty*. 839 F.2d 225, 229-30 (4th Cir. 1988). Consequently, Plaintiff's property interest claim must fail as a matter of law. Additionally, as referenced above, Plaintiff did not attempt to follow the grievance procedure outlined in the Manual, and a set of facts is not present that would entitle Plaintiff to relief under the Due Process Clause. Hence, it is recommended that the Defendants' summary judgment motion be granted as to Plaintiff's Due Process claim.

---

an employment contract. *See Conner v. City of Forest Acres*, 348 S.C. 454, 463, 560 S.E.2d 606, 610 (2002); *Small v. Springs Indus., Inc.*, 292 S.C. 481, 485, 357 S.E.2d 452, 455 (1987); *Marr v. City of Columbia*, 307 S.C. 545, 547-48, 416 S.E.2d 615, 616 (1992).

## C. Section 1985(3) Claim

Plaintiff alleges a cause of action under 42 U.S.C. § 1985(3) that the Defendants "conspired to deprive the plaintiff of equal protection, privileges and immunities of and under the laws, because of his social affiliations." For a § 1985(3) cause of action, a Plaintiff must show "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). The Fourth Circuit "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id*. at 1377.

Plaintiff states the class Plaintiff is a member of is "the perceived political opponents of Defendants." ECF No. 20 at 7. Such an alleged class is not a protected class under § 1985(3).[5] However, affidavits submitted by Plaintiff as discussed above show evidence of racial animus which can be sufficient to meet the second element of a § 1985(3) claim. Even assuming Plaintiff's allegations are sufficient on the second element, Plaintiff cannot as a matter of law prevail on a claim under § 1985(3) because he fails to establish an essential element—the third element of "equal enjoyment of rights secured by the law to all"— of his § 1985(3) cause of action upon which he

---

[5] The Supreme Court rejected the speculative extension of class stating class under § 1985(3) "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993). Section 1985(3) does not "reach conspiracies motivated by bias towards others on account of their economic views, status, or activities." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837 (1983). Political party members are not a protected class under § 1985(3). *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 156 (4th Cir. 1985).

carries the burden of proof. *See Simmons*, 47 F.3d at 1376.

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e provides "a detailed administrative and judicial process designed to provide an opportunity for nonjudicial and nonadversary resolution of claims" related to alleged employment discrimination. *Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372-73 (1979) . The United States Supreme Court addressed the problems that would arise if courts were to allow bypass of Title VII through § 1985(3):

> If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law. Section 1985(3) expressly authorizes compensatory damages; punitive damages might well follow. The plaintiff or defendant might demand a jury trial. The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complaint could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.

*Id.* at 375-76. Section 1985(3) cannot be "invoked to redress violations of Title VII." *Id.* at 378. "Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3). *Id.*

As a matter of law, Plaintiff cannot show he is entitled to relief under § 1985(3) because his claim under § 1985(3) is one of employment discrimination and cannot be redressed by invoking § 1985(3) when Title VII is the applicable basis for such a cause of action. Summary judgment in favor of the Defendants is recommended as to this cause of action.

### D. Section 1985 (2) Claim

Plaintiff alleges that "Defendants with third parties conspired to deprive the plaintiff of and to prevent, by force, intimidation, or threat, the Plaintiff from holding his office, trust, or place of confidence under the United States, and from discharging the duties thereof." ECF No. 1 at 7.

Plaintiff's Complaint uses language directly from § 1985(1) but Plaintiff classifies this claim as a claim under § 1985(2) because "Plaintiff was the victim of intimidation and retaliation against himself as a witness in the ethics complaint against Ms. Cole." ECF No. 20 at 7.

"The gist of the wrong at which § 1985(2) is directed is not deprivation of property, but intimidation or retaliation against witnesses in **federal-court** proceedings." *Haddle v. Garrison*, 525 U.S. 121, 125 (1998)(emphasis added). Plaintiff denied any occurrence of threats or intimidation. ECF No. 16-3 at 74. Plaintiff only referenced an unsigned letter he received when he was first hired, which he has not produced. ECF No. 16-3 at 65-67. With regard to being a witness, Plaintiff testified that Defendant Evans asked him to testify against Affiant Cole regarding a complaint to the ethics commission, and Plaintiff refused. ECF No. 16-3 at 57-60. Plaintiff fails to show he was a "witness" in any **federal** court proceedings, which are necessary elements to a claim under § 1985(2). Thus, Plaintiff's claim fails as a matter of law, and summary judgment in favor of the Defendants on this claim is recommended.

### E. Section 1986 Claim

Plaintiff alleges a violation under 42 U.S.C. § 1986. Section 1986 extends liability to those with knowledge of a § 1985 conspiracy: "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 ... shall be liable to the party injured ... for all damages[.]" 42 U.S.C. § 1986. Viability of a § 1986 claim is based on the antecedent § 1985 claim. If the § 1985 claim is dismissed, the § 1986 claim also fails. *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir.1985); *see Buschi v. Kirven*, 775 F.2d 1240, 1243 (4th Cir. 1985). As discussed above, Plaintiff's two § 1985 claims fail as a matter of law, and, thus, Plaintiff's linked § 1986 claim also fails and Defendants are entitled to summary judgment.

## IV.  CONCLUSION

For the above reasons, Plaintiff fails to create genuine issues of material fact to withstand summary judgment on his claims under sections 1983, 1985, and 1986.  Summary judgment is proper here where Plaintiff cannot establish at least one element of each of his claims upon which he would have the burden of proof at trial.  *See Celotex*, 477 U.S. at 323.  Based on Plaintiff's testimony, allegations, and supporting affidavits, no reasonable juror could find that Defendants violated his First, Fifth, or Fourteenth Amendment rights.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted.

## V. RECOMMENDATION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment be granted.

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

December 28, 2016
Florence, South Carolina

Plaintiff's attention is directed to the important notice on the next page.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).