UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Michael Bordner,                              ) | Civil Action No.: 4:15-cv-05064-RBH |
|                                               ) | |
|         Plaintiff,                            ) | |
|                                               ) | |
| v.                                            ) | **ORDER** |
|                                               ) | |
| Town of Atlantic Beach, Jake Evans,           ) | |
| Charlene Taylor, Josephine Isom, William      ) | |
| Booker, and Linda Cheatham,                   ) | |
|                                               ) | |
|         Defendants.                           ) | |
| _____)       | |

Plaintiff Michael Bordner, brought this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 alleging that Defendants violated his rights by engaging in discrimination against him at his place of employment. Plaintiff also initially alleged a state law claim for conspiracy, which Plaintiff has since conceded. [ECF #20, p. 9]. Defendants have filed a Motion for Summary Judgment [ECF #16], which is now before the Court. This matter is before the Court after issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III, filed on December 28, 2016. [ECF #25]. This matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(e). In the R&R, the Magistrate Judge recommends granting Defendants' Motion for Summary Judgment in its entirety. On January 8, 2017, Plaintiff filed objections to the Magistrate Judge's Report and Recommendation. [ECF #26]. On October 13, 2016, the Parties also filed a Motion to Stay Proceedings pending ruling on this Motion. [ECF #22].

1

**Background**

Plaintiff was employed in August of 2011 to serve as the Chief of Police of the Atlantic Beach Police Department. [ECF #1]. Thereafter, Plaintiff testified that two other police officers were hired, John Jackson and Valerie Brown. [Dep. of Michael T. Bordner, 17:23-18:3, May 27, 2016, attached as Exhibit 3 to Defendants' Memorandum in Support of Summary Judgment.[1]]. In November of 2012, Plaintiff testified he was laid off to supplement payroll in order to repair the town hall in response to an OSHA violation related to a mold growth issue. [ECF #1, p. 2; ECF #16-3, p. 21]. Plaintiff admitted in his deposition that mold existed "throughout the building." [ECF #16-3, p. 22]. Plaintiff testified that almost the entire staff was laid off due to the mold issue present at town hall. [ECF #16-3, p. 22]. However, Plaintiff alleged this reason was pretextual in that Defendants were otherwise engaging in discrimination. [ECF #20, p. 2]. Plaintiff testified that he was not fired, he was simply not "rehired" to his position. [ECF #16-3, p. 37].

In December of 2015, Plaintiff filed this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against Defendants, alleging violations of his constitutional rights, including allegations that he was discriminated against due to his race and deprived of employment in violation of the Town of Atlantic Beach's Policy regarding layoffs. [ECF #1]. He sued the Town of Atlantic Beach, the Mayor Jake Evans, Charlene Taylor and Josephine Isom, two councilwomen, the former town manager William Booker, and the former acting town manager (now assistant town manager) Linda Cheatham. [ECF #1, p. 2]. Retha Pierce, the former mayor, was previously terminated from this lawsuit. [ECF #14]. Plaintiff also alleges that he was discriminated against because he was perceived to be a part of a

---

[1] Plaintiff's deposition is attached as Exhibit 3 to Defendants' Motion for Summary Judgment. For ease of reference, the testimony will be referred to by Exhibit 3 page number from this point forward.

"faction" comprised of a number of employees, however, he testified that he was not aligned with any faction, and he "stayed out of politics." [ECF #16-3, p. 54]. Specifically, Plaintiff alleges that Defendants did not follow a layoff policy that provides, "recalls to work will be made in reverse order of layoff (i.e. the most senior full-time employees will be called back first)." [ECF #1, p. 3]. Plaintiff further alleges that Defendants did not allow Plaintiff a hearing, pursuant to a grievance procedure in the manual which provides an employee a hearing to contest a layoff or a failure to rehire. [ECF #16-3, pp. 126-27, 77]. Plaintiff bases this due process allegation on the fact that he had a "scheduled appointment" to meet with Defendant Linda Cheatham, the acting town manager, but she told him she did not have time to meet with him. [ECF #16-3, p. 26]. Plaintiff was of the opinion that the meeting was to "discuss employment" based on the fact that "they had a change in government." [ECF #16-3, p. 25]. Importantly, Plaintiff testified that it was Defendant Cheatham who set the appointment, not Plaintiff. [ECF #16-3, p. 26]. Plaintiff also testified that he called town hall several times with the "intention to speak to a town manager," but he never spoke to anyone on the phone. Specifically, he did not ever speak to Defendant Booker, the hiring authority. [ECF #16-3, pp. 34, 107]. Furthermore, Plaintiff never sent a letter or notice to anyone to demand a grievance hearing. [ECF #16-3, p.145]. With respect to the manual itself, while Plaintiff did not produce a copy of the actual manual he received, he acknowledged that the copy submitted by Defendants contains the same policy language upon which he bases his claims. [ECF #16-3, pp.117-128].

    On August 23, 2016, Defendants filed a Motion for Summary Judgment as to all of Plaintiff's claims [ECF #16]. On September 22, 2016, Plaintiff filed a response in opposition to Defendants' Motion for Summary Judgment. [ECF #20]. The Parties also filed a joint Motion to Stay the proceedings on October 13, 2016 [ECF #22], which is currently pending, as well. On December 28,

2016, Magistrate Judge Thomas E. Rogers, III issued his Report and Recommendation ("R&R") recommending that this Court grant the motion filed by Defendants on the basis that Plaintiff has not presented evidence to create a genuine issue of material fact for each of Plaintiff's currently-pending claims. This case is now before the Court for review.

## Standards of Review

### I.     Review of the Magistrate Judge's Report & Recommendation

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the report and recommendation to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The right to *de novo* review may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id*. However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.*

### II.    Summary Judgment Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do

not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Defendants move for summary judgment and seek dismissal of Plaintiff's Complaint arguing Plaintiff is unable to satisfy the legal standard for the requested relief. Plaintiff filed his objections on January 7, 2017. [ECF #26]. A review of the record reveals that it appears that Plaintiff's objections and his brief in response to Defendants' Motion are nearly identical, save for the inclusion of approximately five sentences. Thus, Plaintiff's objections are in essence an attempt for him to recycle his initial opposition brief, which has previously been considered by the Magistrate Judge. *See Veney v. Astrue*, 539 F. Supp.2d 841, 845 (W.D. Va. 2008) (an objection which merely restates the basis set forth before the Magistrate Judge is nothing more than a general objection, and "[a] general objection . . . has the same effects as would a failure to object," no part of the R&R is subject to this Court's de novo review) (quoting *Howard v. Sec'y of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991). Nonetheless, this Court will undertake to engage in a renewed analysis of Plaintiff's objections to the extent that Magistrate Judge has not already adequately explained the basis for his recommendation. Finally, this Court notes that with respect to Plaintiff's third pled cause of action (conspiracy), Plaintiff conceded in his brief and objects to dismissal of the state conspiracy claim. Thus, as to this cause of action, this Court grants summary judgment to Defendants.

**Discussion**

**I.     Defendants Charlene Taylor and Josephine Isom**

With respect to Defendants Charlene Taylor and Josephine Isom, Plaintiff does not state any specific actions these two Defendants engaged in that violated his constitutional rights. At Plaintiff's deposition, when asked what actions these two individuals took with respect to his allegations, he stated that they were on the town council. [ECF #16-3, p. 151]. Despite the fact that the Magistrate Judge pointed out a failure to state any actions by these individuals, Plaintiff did not provide any objection or otherwise explain how these two individuals engaged in the alleged acts he now brings against all Defendants. Accordingly, this Court finds that summary judgment is appropriate as to Defendants Taylor and Isom on this ground. *See Shealy*, 929 F.2d at 1011.

**II.     Section 1983 Claims**

Plaintiff alleges Defendants violated 42 U.S.C. § 1983. A legal action under § 1983 allows a "party who has been deprived of a federal right under color of state law to see relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). In order to establish a proper claim under § 1983, Plaintiff must establish two essential elements: (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In cases where a municipality causes the deprivation through "an official policy or custom," liability may attach. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Such a policy or custom can arise in four ways:

> (1) an express policy; (2) through decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers that manifests deliberate indifference to the rights of citizens; or (4) through a persistent

> and widespread practice that would constitute a "custom or usage with the force of law."

*Id.* Local municipalities can be sued under § 1983 for monetary relief where the alleged unconstitutional act is the execution or implementation of a policy statement, ordinance, regulation, or decision officially adopted or promulgated by officers of the local governing body. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Otherwise, a local government may not be sued under this statute for an injury inflicted by its employees or agents. *Id.*

At the heart of all of Plaintiff's allegations is the assumption that, based upon the manual or handbook and two of its applicable policies, Defendants did not have the right to terminate Plaintiff's at-will employment. The first policy is found in the Town of Atlantic Beach Policy, section "Layoff," Section B, Sub-Section 6: "[r]ecalls to work will be made in reverse order of layoff (i.e. the most senior full-time employees will be called back first)" (the "Layoff Policy"). [ECF #16-4, pp. 47-48]. The second policy is in the section titled "Grievance Procedure" and apparently requires employees to request a grievance hearing (the "Grievance Policy"). [ECF #16-4, pp. 26-29]. Defendants assert these two policies do not constitute a binding contract, nor do they create a property interest or some other Constitutional right, the violation of which would result in potential § 1983 liability.

The Court looks to state law to determine whether Plaintiff has any cognizable property interest in his employment. *See Garraghty v. Com. of Va., Dep't of Corr.*, 52 F.3d 1274, 1279 (4th Cir. 1995) (employee claiming he was deprived of his property rights in employment, one being in the benefit of a state grievance procedure and the other in continued employment). Under established state law, an employee handbook can alter the status of an employee as "at will." *Small v. Springs Indus. Inc.*, 292 S.C. 481, 486, 486, 357 S.E.2d 452, 455 (1987). However, an employee manual or handbook which

meets certain requirements will not create an express or implied contract if explicitly disclaimed. S.C. Code Ann. § 41-1-110. According to state law, the disclaimer or applicable language must be in underlined capital letters on the first page of the document and signed by the employee. S.C. Code Ann. § 41-1-110  Defendants argue that the employee manual including the policies states that employment with the Town of Atlantic Beach (the "Town") is "at will," that the Town may relieve an employee at its own discretion, that the manual does not create a binding contract or property interest for any employee, and that the Town reserves the right to not follow progressive disciplinary procedures, such as found in the Grievance Policy.  Furthermore, Defendants point out that the manual in this case complies with the South Carolina law because it contains the necessary language in bold and underlined language. Plaintiff asserts that he is not positive if this was the same manual he received, but he conceded that the Layoff Policy and Grievance Policy were the same. An affiant testified that this was the same manual used from 1997 to 2015.  The Magistrate Judge recommended that the handbook did not create an independent property right for Plaintiff.  In Plaintiff's objections, he cites to the general public policy reasoning behind the implementation of S.C. Code Ann. § 8-17-110, the statute that discusses the reasons behind adopting manuals or handbooks.  Plaintiff does not otherwise object to the reasoning of the Magistrate Judge regarding this finding.  In reviewing the record, this Court finds that the manual does not appear to create basis for liability upon which Plaintiff can rely.  Finally, Plaintiff testified at his deposition that there was no custom or policy of the Town of Atlantic Beach which violated his constitutional rights. [ECF #16-3, pp. 61, 82, 147-148].  This testimony alone could foreclose *Monell* liability of the Town.  However, assuming that Plaintiff somehow showed a genuine issue of fact regarding an alleged property right in his employment against the other Defendants,

8

Plaintiff's claims are subject to dismissal on summary judgment grounds for the additional reasons discussed below.

### A. First Amendment § 1983 Claim

Citizens have the right to associate for the purpose of engaging in activities protected by the First Amendment, i.e. speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). The threshold question in a First Amendment challenge is whether any protected First Amendment right has been implicated. *See Huang v. Board of Governors*, 902 F.2d 1134, 1140 (4th Cir. 1990). In determining whether a group's freedom of association has been violated, the court must consider whether the group is engaging in expressive association. Here, Plaintiff must show that this alleged opposing "faction," one which he testifies he was not a member of, engaged in some form of protected expressive conduct. *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 257 (4th Cir. 2005).

With respect to Plaintiff's First Amendment violations, he alleges that he was "intimidated, terrorized, and restrained from the exercise of his right to association, speech and to criticize the government." [ECF #1, p. 5]. Plaintiff thus alleges that his First and Fourteenth Amendment rights were violated because he was not free from retaliation for the exercise of his freedom of association, speech and criticizing his employer, despite the fact that he admits he was not a member of any group. [ECF #1, p. 4]. In fact, the lynchpin of his First Amendment claim is that he was not rehired to his job because he was *perceived* by Defendants to be a part of an "opposing faction." This Court first notes that Plaintiff does not provide this Court with any substantive proof regarding whether these particular

9

Defendants felt he was a part of some alleged faction.[2] The Magistrate Judge determined that Plaintiff did not show as to any Defendant that he was "intimidated, terrorized, or restrained" regarding his right to association, or that he was a member of a group that engaged in protected expressive conduct, such that his freedom of association was violated. In his objections, Plaintiff states simply that "clearly" he was treated differently and "evidence says" this was due to his perceived loyalties or race (Plaintiff is a white male). Other than his testimony of his perception that he was part of an opposing faction and thus not rehired, Plaintiff does not provide a sufficient set of facts as to any individual Defendant to show how any named Defendant violated his First Amendment rights to be free from retaliation for the exercise of freedom of association, speech, and criticism of Defendants' "lies, corruption and tyranny." Regardless, as the Magistrate Judge stated in his R&R, "the threshold question in any First Amendment challenge is whether any protected First Amendment right is involved. If Plaintiff's group here is the *perception* of belonging to the opposing faction, then Plaintiff must show that the group engages in some form of protected expressive conduct. *See Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 257 (4th Cir. 2005). A glance at foundational precedents of the freedom of association reveals that Plaintiff's allegations based on Defendants' *perception* of Plaintiff being a member of a group does not fall within the ambit of protected expressive conduct." [ECF #25, pp. 10-11]. Even if Defendants' perception of Plaintiff being a member of a group could arguably be considered to be a form of expressive conduct, Plaintiff appears to be steadfast in his testimony that he did not associate or want to associate with any alleged faction. Accordingly, this Court overrules Plaintiff's objection.

---

[2] Plaintiff instead testified that because he turned his former supervisor into SLED, his friends (the Defendants) would not rehire Plaintiff. [ECF #16-3, p. 57]. Plaintiff also alleged that Defendant Jake Evans asked him to make a complaint to an ethics board about Carolyn Cole, but he refused to do so, further aligning him against one faction. [ECF #16-3, p. 57].

### B. Fifth Amendment Due Process § 1983 Claim

In his Complaint, Plaintiff brings a cause of action pursuant to a violation of his Fifth Amendment Due Process Rights. The Fifth Amendment to the Constitution provides, "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The Fourteenth Amendment contains a similar due process clause, and states , "[n]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Due process rights are made applicable to the states through the Fourteenth Amendment. Procedural due process rights attach when state action condemns a person to suffer a grievous loss of any kind. *McNeil v. Butz*, 480 F.2d 314, 318 (4th Cir. 1973). However, in order to be protected by the Due Process Clause, an individual must have a liberty or property interest within the meaning of the Fourteenth Amendment. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-71 (1972), and show that he has been deprived of that interest by some "state action." *Stone v. Univ of Md. Medical System Corp.*, 855 F.2d 167, 172 (4th Cir. 1988). In order to determine if any individual has a constitutionally protected property right, the court looks to state law. *See Garraghty v. Com. of Va., Dep't of Corr.*, 52 F.3d 1274, 1279 (4th Cir. 1995) (employee claiming he was deprived of his property rights in employment, one being in the benefit of a state grievance procedure and the other in continued employment). However, even if a state chooses to provide a grievance procedure, the procedure by itself "does not create an independent substantive right." *Id.* at 1284 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250-251 (1983). In *Garraghty*, the Fourth Circuit recognized that the fact that a state agency violates its own procedures does not necessarily mean it has contravened federal due process requirements. *Id.* at 1285. It appears Plaintiff's basic argument is that he was deprived of his property interest in employment by Defendants, who were acting under color of state law when he was denied the opportunity for a hearing and was not

11

hired back after his layoff. The basis of these "rights" is the policies found in the employee manual, specifically the Grievance Policy and the state statutes discussed below. [ECF #16-4, pp. 26-29].

The Magistrate Judge recommends summary judgment as to this claim because Plaintiff does not have a property right in his employment based on state law. The Magistrate Judge considered both S.C. Code Ann. §§ 5-13-90 and 8-17-110 *et seq.* in determining whether Plaintiff had a right to employment. Section 5-13-90 establishes the duties and responsibilities of the manager of a municipality, and provides that a manager may remove any appointive officer or employee of the municipality. Courts have interpreted this statute to provide for at-will employment of municipal employees. *Mills v. Leath*, 709 F. Supp. 671, 674 (D.S.C. 1988). The Fourth Circuit has previously held that two police officers did not have a property interest in their employment pursuant to this Code Section because the town manager retained the power to fire an employee, and the manual in place did not otherwise grant a property interest in employment despite containing several procedural protections. *Bunting v. City of Columbia*, 639 F.2d 1090, 1093-94 (4th Cir. 1981).

Next, the Magistrate Judge considered whether § 8-17-110 *et seq.* establishes a uniform procedure to resolve grievances for municipal employees. The statute provides that if a town adopts a plan to resolve employee grievances, the plan "if adopted, shall conform substantially to the guidelines set forth in this article." S.C. Code Ann. § 8-17-120. The Magistrate Judge determined that the statute does not create an independent property right, and Plaintiff has not alleged that the grievance policy does not conform to these guidelines. As the Magistrate Judge indicated in his decision, Plaintiff did not follow the grievance process or otherwise ask for a hearing. In fact, Plaintiff testified that with respect to the meeting with Defendant Cheatham, it was not he who chose to set that meeting up, nor

was it for the purpose of a formal grievance complaint. Thus, his argument is without merit. [ECF #25, p. 13].

Finally, in recommending granting summary judgment in favor of Defendants, the Magistrate Judge considered the fact that the employee manual contained a disclaimer that specifically stated that employment was "at-will" and was conspicuous as a matter of law. *Marr v. City of Columbia*, 307 S.C. 545, 547-48, 416 S.E.2d 615, 616 (1992) (explaining disclaimers are conspicuous as a matter of law when they are in a prominent place, bold and capitalized). This disclaimer, as pointed out by the Magistrate Judge, was found in bold and underlined, in all capital letters in the introduction to the manual and the language appears again within the grievance procedure. [ECF #16-4, p. 26]. The law also provides that the disclaimer should be signed. S.C. Code Ann. § 41-1-110. The handbook in question provides a place for a signature, but Plaintiff did not produce a copy of the policy he received, and he testified he did not remember if he signed it. However, even if the disclaimer was not valid, any argument that the Grievance Policy somehow circumvents the fact that Plaintiff remained an at-will employee fails because he fails to show that he sought to avail himself of the procedure outlined in the Grievance Policy.

In Plaintiff's objections, he argues simply that he was entitled to a hearing, regardless of whether he was entitled to employment. Plaintiff relies upon state law cases he cites to argue that there is an exception to the "at-will" employment doctrine that in an unlawful discharge action, the presence of a disclaimer in the handbook does not apply. [ECF #26, p. 7].[3] First, he testified he was not discharged;

---

[3] Plaintiff also argues that this statute stating that a handbook does not create an employment contract if it contains a conspicuous disclaimer does not apply because it applies to handbooks issued after June 30, 2004, and he alleges his is dated April 1997. [ECF #26, p. 7]. First, Plaintiff was hired in August of 2011. Second, Plaintiff has not produced a copy of his handbook. Third, Plaintiff testified that the manual produced included the same applicable policies as he received. [ECF #25, p. 3]. Moreover, even if § 41-1-110 did not apply since there is not a signed copy in the record, the cases predating the statute explain that manuals with conspicuous disclaimers do not create an employment contract. Accordingly, this Court

he was laid off, along with almost every other employee, due to a mold issue, and he was not rehired. Plaintiff makes no argument that a laid off, non-employee can rely on an employee manual. Second, as pointed out by the Magistrate Judge, Plaintiff testified that he did not request or demand a hearing. Instead, it appears that he presumed that when he met with Defendant Cheatham, they would discuss his employment; and when she did not meet with him, this supports his claim that he was denied a hearing, thereby forming the basis of his due process claim. This Court finds that the record does not contain a genuine issue of material fact regarding whether Plaintiff's due process rights were violated. Therefore, Plaintiff's objection is overruled, and this Court grants summary judgment as to this claim.

### III.    Section 1985 Claims

Plaintiff alleges Defendants violated sections two and three of 42 U.S.C. § 1985. First, under §1985(2), if two or more persons conspire to deter "by force, intimidation, or threat" an individual participating in any court of the United States from attending or testifying in any matter, then that party may be able to recover damages. Plaintiff argues that Defendants with unnamed third parties conspired to deprive and prevent him from holding office by force, intimidation or threat. [ECF #1, p. 7]. Defendants requested summary judgment as to this claim because they argue that the "wrong" that this section aims to prevent is the interference with federal-court proceedings by intimidating witnesses. Defendants point out that at his deposition, Plaintiff denied that he experienced any physical violence or intimidation. [ECF #16-3, pp. 85-86]. The only perceived threat Plaintiff testified to was an anonymous letter he received when he began his employment, which Plaintiff has been unable to produce a copy of at this time and was not received by him during the rehiring process. [ECF #16-3, p. 65]. Plaintiff's claims appear to be related to the alleged ethics proceeding against Carolyn Cole.

---

does not find this argument to have any merit.

14

However, as Defendants point out, Plaintiff does not identify any point in time in which he was a witness in a federal case at any time prior to filing this claim.

The Magistrate Judge recommends summary judgment because Plaintiff alleges simply that he was the victim of intimidation and retaliation because he was an alleged witness in an ethics complaint against another employee. In fact, Plaintiff testified he actually refused to participate in any ethics proceedings against Ms. Cole. Furthermore, the Magistrate Judge also acknowledged that § 1985(2) seeks to prevent intimidation or retaliation against witnesses in federal court proceedings. *See Haddle v. Garrison*, 525 U.S. 121, 125 (1998). Plaintiff does not raise any cognizable objection to the Magistrate Judge's analysis of this claim. A review of the record does not reveal that Plaintiff has brought forth any facts to suggest § 1985(2) is applicable. Accordingly, this Court agrees with the Magistrate Judge that summary judgment is appropriate as to this claim.

Second, in order to establish a cause of action under § 1985(3), a plaintiff must show (1) a conspiracy of two or more persons; (2) motivated by a specific, class-based, invidiously discriminatory animus; (3) to deprive a plaintiff of the equal enjoyment of rights secured by the law to all; (4) and which results in injury to the plaintiff; as (5) a consequence of an overt act committed by the defendants in connection with such conspiracy. *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). With respect to § 1985(3), Plaintiff argues that he was subject to "class based" or racial animus. However, Plaintiff also explains that "Defendants habitually misstate Plaintiff's claim. He didn't feel it was racial. He was a member of a class, the perceived political opponents of Defendants." [ECF #26, p. 7]. He does not otherwise provide a discernible objection to the Magistrate Judge's analysis on this issue other than to restate that Defendants deprived him of equal enjoyment of rights secured by the law in that he received "differential treatment." [ECF #26, p. 7]. However, as the Magistrate Judge stated on page sixteen of

his R&R, employment discrimination is to be sought under Title VII of the Civil Rights Act, not § 1985(3). [ECF #25, p. 16]. Accordingly, this Court finds that summary judgment is appropriate as to this ground, and Plaintiff's objections are overruled.

### IV.     Section 1986 Claim

Section 1986 extends liability and allows for damages against individuals with knowledge of wrongs conspired to be done as contemplated under § 1985, are about to committed, and having the power to prevent or aid in preventing the commission of an act, neglects or refuses to do so. 42 U.S.C. § 1986. A valid cause of action brought under § 1986 is dependent upon the existence of a claim pursuant to 42 U.S.C. § 1985. *Trerice v. Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985). Accordingly, if a plaintiff's underlying § 1985 actions are dismissed, the § 1986 claims also fail as a matter of law. Here, the Magistrate Judge recommends summary judgment as to Plaintiff's § 1986 claims based on the dismissal of all §1985 claims. This Court's independent review of the record does not reveal any set of facts upon which Plaintiff can make a showing that either his § 1985 or § 1986 claims survive. Accordingly, this Court agrees with the Magistrate Judge that summary judgment is appropriate as to Plaintiff's § 1986 claims.

### Conclusion

The Court has thoroughly reviewed the entire record, including Plaintiff's Complaint, the Magistrate Judge's Report and Recommendation, Plaintiff's Objection to the Report and Recommendation, and the applicable law. For the reasons stated above and by the Magistrate Judge, the Court overrules Plaintiff's objections and adopts and incorporates the Report and Recommendation of the Magistrate Judge. [ECF #25].

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [ECF #16] is **GRANTED** in its entirety, Plaintiff's Complaint [ECF #1] is dismissed, and this case is **DISMISSED WITH PREJUDICE**. The Motion to Stay Proceedings [ECF #22] is **DENIED** as moot.

**IT IS SO ORDERED**.

Florence, South Carolina            s/ R. Bryan Harwell
March 31, 2017                      R. Bryan Harwell
                                    United States District Judge